```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION
```

```
DORIS McGARY,                     *
                                  *
     Plaintiff,                   *
                                  *
vs.                               *   Civil Action No. 05-00408-KD-B
                                  *
JO ANNE B. BARNHART,              *
Commissioner of                   *
Social Security,                  *
                                  *
     Defendant.                   *
```

## REPORT AND RECOMMENDATION

Plaintiff Doris McGary ("Plaintiff") brings this action seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on February 15, 2006. Upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner be **REVERSED** and **REMANDED.**

I.   **Procedural History**

Plaintiff protectively filed an application for disability benefits on March 18, 2003, alleging that she has been disabled since January 1, 2000 due to obesity, diabetes mellitus, arthritis, high blood pressure, hemorrhoids, osteoarthritis of her right

knee/knee pain and heel spurs. (Tr. 15, 35-36, 60-62, 67). Plaintiff's claim was denied on initial consideration and upon reconsideration. (Id. at 35-41). She then filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Id. at 42). On November 18, 2004, ALJ Joseph F. Gilliland ("ALJ Gilliland") held an administrative hearing which was attended by Plaintiff, her representative and a vocational expert. (Id. at 195-214). On December 3, 2004, ALJ Gilliland issued an unfavorable decision. (Id. at 12-33). Plaintiff sought review of the ALJ's decision, and on July 7, 2005, after receiving additional evidence, the Appeals Council ("AC") denied Plaintiff's request for review, making the ALJ's decision the final administrative decision. (Id. at 4-7, 10-11). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Background Facts

Plaintiff was born on September 10, 1960, and was 44 years old at the time of the administrative hearing. (Tr. 60, 197). Plaintiff testified that she has a 12th grade education, and she described herself as a "C" student. (Id. at 71, 204, 209). Plaintiff's work history consists of a job as a substitute or "on call" cook at a school cafeteria. (Id. at 68, 201-204). According to Plaintiff, she worked as an "on call" cook, for one day a week, for a couple of months. (Id. at 68, 71, 201-202). Plaintiff

testified that she weighs 280-300 pounds and is 5'7". (Id. at 66, 202, 205-206). Her reported medications include Naproxen, Ultram, Univase, Tramadol HCL, Moexipril HCL, Hydrochlorothiazide, Humulin N, Actos, Avandia, Extra Strength Tylenol, and Ibuprofen 800 m.g. (Id. at 70, 79, 85-86).

Plaintiff testified that her daily activities consist of waking around 4:30 a.m., fixing breakfast and readying her daughter for school, then returning to bed for a few hours due to pain, eating breakfast and sitting around. (Tr. 200). According to Plaintiff, she cannot walk/stand for long periods of time. (Id.) Plaintiff testified that her sister performs all of the household chores and her daughter helps her bathe. (Id. at 200-201, 208). Plaintiff reported that she does light shopping in her wheelchair, and that her cooking only consists of cooking those items that she can place in the microwave. (Id. at 208). Plaintiff testified that if she had a job where she could sit/stand whenever she wanted and/or sit all day long, and not have to lift anything, she could still not do that job because her pain medications make her sleepy. (Id. at 209-210).

**III. Issues on Appeal**

A.  Whether the ALJ erred at step three of the sequential evaluation process, by failing to find Plaintiff disabled under Listing 12.05C?

B.  Whether the ALJ erred by finding Plaintiff was not disabled, in contradiction to the VE's testimony?

C.  Whether the ALJ erred by failing to obtain a residual

> functional capacity assessment from a treating or examining physician?

D. Whether the ALJ erred by failing to identify a specific residual functional capacity?

E. Whether the ALJ erred by failing to properly apply the pain standard using a combination of arthritis and obesity?

## IV. Analysis

### A. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into

---

[1] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

account evidence both favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]  See, e.g., Crayton v. Callahan,

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the

120 F.3d 1217, 1219 (11th Cir. 1997).

In the case sub judice, ALJ Gilliland determined that Plaintiff's morbid obesity and right knee arthritis are severe impairments; however, they do not meet or medically equal any of the Listings impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-33).  The ALJ found that Plaintiff's insulin-dependent diabetes mellitus and systemic hypertension are not severe impairments because they are under good control with medication.  (Id.)  Next, the ALJ determined that Plaintiff's subjective allegations of pain and functional limitations are not credible and that she retains the residual functional capacity ("RFC") to perform sedentary work.  (Id.)  The ALJ also found that Plaintiff cannot perform any past relevant work ("PRW"), and that the framework of Medical-Vocational Guidelines Rule 201.22 ("the Grids") and VE testimony demonstrate that she has the RFC to perform jobs that exist in significant numbers in the national economy.  (Id.)  Accordingly, ALJ Gilliland concluded that Plaintiff is not disabled within the meaning of the Act.  (Id.)

Based upon a review of the record, the undersigned finds that the ALJ's decision is not supported by substantial evidence.  The relevant evidence of record reveals that Plaintiff was treated by

---

Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

Gary Kania, D.O. ("Dr. Kania") from 1995-2003, in part, for hemorrhoids and a colonoscopy. (Tr. 114, 116, 118, 120-139, 155-156). Plaintiff was also treated by Frank Dozier, M.D. ("Dr. Dozier") from April 1997 through August 2002, and then from April 2003 through August 2004. (Id. at 92-114, 118, 155-158, 182-187). Plaintiff complained to Dr. Dozier about pain in her back, knee, feet and hand. (Id.) She also reported problems with headaches, swelling and hemorrhoids. (Id.) She was diagnosed with osteoarthritis, morbid obesity, hematochezia, Type II diabetes and borderline hyperthyroid. (Id.) Dr. Dozier advised that "the most important thing to help the knee pain is going to be weight loss." (Id. at 104).

Plaintiff was treated at Orthopaedic & Sports Medicine of Mobile, P.C., on July 19, 2000 and August 16, 2000, for knee pain and arthritis. (Tr. 87-91). Plaintiff was diagnosed with DJD, possible degenerative meniscus and probably patella femoral involvement. (Id. at 89). She was given an injection of Celestone in July, and was later prescribed medication and a walking cane for use "as needed" in August 2000. (Id. at 88-89). Plaintiff was also hospitalized and/or treated at an Emergency Room, on several occasions from September 2001-2003, for high blood sugar, lower back pain and foot pain. (Id. at 114-119, 155-175).

On June 5, 2003, Mohammed A. Nayeem, M.D. ("Dr. Nayeem") performed a consultative examination of Plaintiff at the request of

7

the Social Security Commission. (Id. at 140-144). Dr. Nayeem diagnosed Plaintiff with chronic degenerative arthritis of the right knee, worsened by her extreme obesity; limping gait due to right knee arthritis and use of a cane to walk; diabetes, adult onset, insulin dependent, under control with insulin; systemic hypertension, under control with medication and no evidence of organ damage with vision 20/20 near and far; and obesity exogenous, gross, adding that she needs to lose some weight to relieve the arthritic pain. (Id. at 143). Dr. Nayeem noted that "[t]he main problem this lady has is extreme and gross obesity, which is sustaining her diabetes mellitus and also making her arthritis worse and continuing her hypertension. Once she loses some weight, all these problems should resolve." (Tr. 143). Dr. Nayeem concluded that in her present condition, due to her right knee arthritis, "she cannot take part in those activities which involve prolonged standing or walking." (Id. at 144).

A July 29, 2003 Vocational Rationale Form completed by a Disability Specialist concluded that Plaintiff has no PRW, has an RFC/MRFC assessment of a maximum work capacity of a sedentary work range, has not acquired transferable skills, and is not disabled as she can perform other jobs. (Id. at 80-82). On July 30, 2003, a Residual Physical Functional Capacity Assessment was completed by State Agency medical consultant Carol S. Kerr, M.D. ("Dr. Kerr"). Dr. Kerr opined that Plaintiff can occasionally lift/carry 10

pounds; frequently lift/carry 10 pounds; stand/walk at least two and about six hours in an 8 hour workday (she needs her cane for long ambulation but no cane for short ambulation and "TP said to use as needed[]"). (Id. at 145-154).

On March 25, 2004, Plaintiff was evaluated by Donald W. Blanton, Ph.D. ("Dr. Blanton") at the request of Plaintiff's counsel. (Id. at 176-181). Plaintiff reported that her sleep was poor, appetite was good, weight was stable and that she had a normal energy level. (Id. at 177). She denied ever having any serious nervous trouble/depression or any prior history of mental health care. (Tr. 177). Testing of Plaintiff revealed as follows: WAIS-III verbal IQ 69, performance IQ 68, full scale IQ 66, which placed her in the mild range of mental retardation. (Id. at 177-178). Plaintiff's scores on the Wide Range Achievement Test-III (WRAT-III) reflected that she functions at the 4th grade level for reading, 5th grade level for spelling and 2nd grade level for arithmetic. (Id. at 178). Dr. Blanton found that the scoring was a valid assessment of Plaintiff's current level of intellectual functioning and that she appeared to put quite good effort into her work. (Id.) Dr. Blanton noted that Plaintiff's academic achievement testing revealed that she is functionally illiterate. (Id.) He diagnosed her with mild mental retardation (Axis II); arthritis, diabetes, hypertension and obesity (Axis III); financial problems (Axis IV); and assigned

her a GAF rating of 66[3] (Axis IV).  (Id.)

1. **Whether the ALJ erred at step three of the sequential evaluation process, by failing to find Plaintiff disabled under Listing 12.05C?**

Plaintiff asserts that the ALJ erred at step three of the sequential evaluation process by failing to find that she is disabled under Listing 12.05C.  Plaintiff contends that she meets Listing 12.05C due to her WAIS-III test results of verbal IQ of 69, performance IQ of 68 and full scale IQ of 66; her WRAT test results of reading skills at a 4th grade level, spelling skills at a 5th grade level and arithmetic skills at a 2nd grade level; and Dr. Blanton's finding that she is functionally illiterate as well as his diagnosis of mild mental retardation.  (Tr. 176-178).

Listing 12.05C falls under § 12.00 MENTAL DISORDERS and provides that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied ···· C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

---

[3] A GAF score between 61-70 represents some mild symptoms or some difficulty in social, occupational or school functioning but generally functioning pretty well, has some meaningful interpersonal relationships. Diagnostic And Statistical Manual of Mental Disorders (DSM-IV-TR) at 32-34 (4th Ed. Text Revision 2000).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.[4] A claimant meets the criteria for presumptive disability under Listing 12.05(c) when the claimant presents a valid IQ score of 60-70, an onset of impairment before age 22 *and* evidence of an additional and significant mental or physical impairment (*i.e.*, having more than "minimal effect" on the claimant's ability to perform basic work activities). See, e.g., Edwards by Edwards v. Heckler, 755 F.2d 1513, 1516 (11th Cir. 1985).[5] Claimant bears this burden. Id.

In his decision, the ALJ addressed Listing 12.05C for Mental Retardation, and Dr. Blanton's findings, as follows:

> . . . . It might be argued that the claimant has impairments that meet the level of severity contemplated by Medical-Listing 12.05 *Mental Retardation and Autism* . . . . Such an argument would be erroneous. The introductory paragraph explains that mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22). Part C of the listing requires in addition that a claimant will be found disabled due to mental retardation, if on a valid IQ test, he or she obtains a Verbal, Performance, or Full-Scale IQ score of 60 through 70 and a physical or mental impairment imposes additional and significant work-related limitation of function. Thus, four elements are required in order to meet listing 12.05C. First, the individual must have significantly subaverage general intellectual functioning manifested during the developmental period. In the instant case, there is no evidence that he claimant had significantly

---

[4] Cobb v. Barnhart, 296 F. Supp. 2d 1295 (N.D. Ala. 2003); Davis v. Shalala, 985 F.2d 531 (11th Cir. 1993)(quoting Listing 12.05C).

[5] See, e.g., Wilkinson on behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991); Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Berryman v. Massanari, 170 F. Supp. 2d 1180, 1186-1187 (N.D. Ala. 2001); Cobb, 296 F. Supp. at 1296-1297.

subaverage general intellectual functioning manifested during the developmental period.

Second, the claimant must have deficits in adaptive behavior initially manifested before age twenty-two. While the degree of "significantly subaverage general intellectual functioning" is specified in Listing 12.05, the degree of deficits in adaptive functioning needed to fulfill the capsule definition of Listing 12.05 is not . . . .

* * *

. . . we look to the standards established by the professional community in defining the degree of deficits in adaptive functioning, as well as the methods for documenting those deficits . . . . There are ten adaptive skill areas: (1) Communication, (2) Self-Care, (3) Home-Living, (4) Social, (5) Community Use, (6) self-Direction, (7) Health & Safety, (8) Functional Academics, (9) Leisure, and (10) Work."[]

* * *

The degree of deficits in adaptive functioning needed to establish the diagnosis of mental retardation is not specified in the listing. Consequently, we refer to the professional community for their methods and criteria in establishing the requisite level of deficits that support the diagnosis. The degree of deficits or limitations in adaptive functioning needed to support a diagnosis of mental retardation is:

> The general rule is that if two or more adaptive skill limitations fall substantially below the average level of functioning . . . then the individual would meet this second criterion for a diagnosis of mental retardation . . . .

In the case at bar, there is no evidence that the claimant had deficits in communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health or safety. Therefore, the record does not establish that the claimant had deficits in two areas of adaptive functioning as required by the DSM-IV as one of the key elements for establishing mental retardation.

Third, **the claimant must obtain a Verbal, Performance, or**

12

> **Full-Scale IQ score of 60 through 70 on a valid IQ test. The claimant's Verbal IQ score of 69, performance IQ score of 68, and Full-Scale IQ score of 66** as recorded by Dr. Blanton **would appear to meet this requirement**. However . . . . a valid IQ score alone is not conclusive of mental retardation if the score "is inconsistent with other evidence in the record on the claimant's daily activities and behavior." . . . .
>
> Fourth, **the claimant must have a physical or mental impairment that imposes additional and significant work-related limitation of function. The claimant is morbidly obese that exacerbates the arthritis of her right knee. Thus, the fourth requirement is met.**
>
> * * *
>
> . . . . In the instant case, the claimant has past relevant work as a Cook. The presumption that mental retardation is a condition that remains constant throughout life is clearly rebutted in the instant case because the claimant's adaptive functioning prior to age twenty-two and after age twenty-two is inconsistent with the functioning of a mentally retarded individual.
>
> * * *
>
> In summary, the evidence demonstrates that the claimant's impairments are not attended with essential elements that are required to meet or medically equal Medical-Listing 12.05C. First, it is not established that she is mentally retarded because there is no evidence that the claimant had significantly subaverage general intellectual functioning manifested during the developmental period. Second, deficits in adaptive functioning are not demonstrated in any area before the claimant attained age twenty-two.
>
> No treating or examining source or medical expert has concluded that the claimant's impairments, considered singularly and in combination, meet or medically equal Medical-Listing 12.05C or any other listed impairment. In addition, I examined the record and the evidence does not support such a conclusion. Thus, the claimant's severe and not severe impairments considered singularly and in combination are not of listing-level severity.
>
> * * *
>
> In arriving at the preceding . . . conclusions, I give very little weight to Dr. Blanton's opinion, findings, and assessment. It is emphasized that the claimant apparently underwent the examination that formed the

13

>basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the counselor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored. More importantly, Dr. Blanton is a licensed professional counselor and not a licensed clinical psychologist[] Licensed professional counselors are not acceptable medical sources as defined at 20 C.F.R. § 416.913(a). Rather, they are "other sources" under 20 C.F.R. § 416.913(d). As "other source[s]," their opinions are not medical opinions and are not entitled to controlling weight or great weight.
>* * *

(Tr. 24-27 (citations and footnotes omitted) (emphasis added)).

As noted supra, a claimant meets the criteria for presumptive disability under Listing 12.05(c) when the claimant satisfies two prongs: 1) a valid IQ score of 60-70 and onset of impairment before age 22; and 2) evidence of an additional and significant mental or physical impairment (i.e., having more than "minimal effect" on the claimant's ability to perform basic work activities). See, e.g., Edwards, 755 F.2d at 1516.[6] At the outset, the ALJ conceded that Plaintiff meets the second prong of Listing 12.05C, by finding that she has the physical impairment of morbid obesity (that exacerbates her right knee arthritis) which imposes an additional and significant work-related limitation of function. (Tr. 25-26). Thus, Plaintiff's appeal turns on the first prong of Listing 12.05C:

---

[6]See, e.g., Wilkinson, 847 F.2d at 662; Barron, 924 F.2d at 229; Lowery, 979 F.2d at 837; Berryman, 170 F. Supp. 2d at 1186-1187; Cobb, 296 F. Supp. at 1296-1297.

whether she has a valid IQ score of 60-70 and onset of impairment before age 22 (i.e., significantly subaverage general intellectual functioning manifested and deficits in adaptive behavior initially manifested before age 22).

A claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presents evidence of low IQ test results *after* the age of twenty-two.  Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001). Absent evidence of sudden trauma that can cause retardation, the IQ scores create a rebuttable presumption of a fairly constant IQ through the claimant's life.  Id at 1268-1269.  However, the Eleventh Circuit has held that a valid IQ score is not conclusive of mental retardation if the score is "inconsistent with other evidence in the record on the claimant's daily activities and behavior."  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986).[7]

In this case, the ALJ found that Dr. Blanton's scoring for Plaintiff - a Verbal IQ of 69, Performance IQ of 68 and Full Scale IQ of 66 - "would appear to meet th[e] requirement[]" that a claimant must obtain a Verbal, Performance, or Full Scale IQ score

---

[7]In Popp, the plaintiff had a two year college associate's degree and was enrolled in his third year of college as a history major. Id. at 1498.  He had previously taught algebra at a private school. Id. In this case, the Eleventh Circuit held that the listings for mental retardation did not require the Commissioner to make a finding of mental retardation based upon the results of an IQ test alone. Id. at 1499-1500. However, the test results must be considered in conjunction with other medical evidence including the daily activities and behavior of the claimant. Id.

of 60 through 70 on a valid IQ test for Listing 12.05C (i.e., that Dr. Blanton's testing constituted valid IQ test scores). (Tr. 25). The ALJ then determined that while Dr. Blanton's IQ scores for Plaintiff may be valid, the scores were not conclusive of mental retardation because they were inconsistent with evidence of record regarding her daily activities and behavior (citing Lowery, and Popp).[8] (Id.) According to the ALJ, "[t]he presumption that mental retardation is a condition that remains constant throughout life is clearly rebutted in the instant case because the claimant's adaptive functioning prior to age twenty-two and after age twenty-two is inconsistent with the functioning of a mentally retarded individual." (Id. at 26). A searching review of the ALJ's decision however, fails to reveal the evidence upon which he relied to reach his decision. In other words, the ALJ provided no explanation, and failed to reference any evidence of record, as to just how Plaintiff's daily activities and behavior are "inconsistent"[9] with

---

[8] Lowery, 979 F.2d at 837 (finding that a valid IQ test score is not conclusive of mental retardation if the score is inconsistent with other evidence of record as to claimant daily's activities and behavior); Popp, 779 F.2d at 1499-1500 (holding that an IQ test score alone does not establish a finding of mental retardation as the ALJ is to evaluate the IQ score in conjunction with the medical report and test results to ensure they correspond with daily activities and behavior).

[9] The undersigned notes that while failing to provide any explanation of such inconsistency, the ALJ stated later in his decision, that in arriving at his "preceding conclusions" he gave "very little weight to Dr. Blanton's "opinion, findings, and assessment[,]" because he was a licensed professional counselor and the examination was conducted through attorney referral and he was presumably paid for his report. (Tr. 27). However, while the ALJ discredited Dr. Blanton's overall findings, he did not specifically find that Dr. Blanton's IQ test scores for Plaintiff were invalid.

the functioning of a mentally retarded individual.  This is particularly problematic given evidence of record which reveals that in addition to her low test scores, Plaintiff's reading skills are at the 4th grade level, her spelling skills are at the 5th grade level, her arithmetic skills are at a 2nd grade level, and Dr. Blanton determined that she is functionally illiterate.  See supra. Moreover, Plaintiff's entire work history consists of working on an on-call basis, as a cook in a local school cafeteria, one day a week, for a couple of months.  Id.  Because the ALJ did not set forth his reasons for concluding that the presumption of mental retardation had been rebutted, this case must be remanded.  Upon remand, the ALJ shall expressly discuss the evidence relied upon to conclude that the presumption of mental retardation has been rebutted in this case.

Furthermore, because the undersigned concludes that the ALJ erred at step three of the analysis, the Court has not discussed the remaining issues raised by Plaintiff on appeal.

**V.    Conclusion**

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income is due to be **REVERSED** and **REMANDED.**

17

The attached sheet contains important information regarding objections to this <u>report and recommendation.</u>

**DONE** this the **28**[th] day of **August, 2006.**

<u>     /s/ Sonja F. Bivins     </u>
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                      **/s/SONJA F. BIVINS**
                                                  **UNITED STATES MAGISTRATE JUDGE**